## COURT OF COMMON PLEAS OF BALTIMORE CITY

Filed February 28, 1899.

Decided February 27, 1899.

STATE OF MARYLAND, USE OF CHARLES F. HERBERT

VS.

THE TOLCHESTER BEACH IMPROVEMENT COMPANY OF KENT COUNTY AND THE TOLCHESTER STEAMBOAT COMPANY OF BALTIMORE CITY.

*Albert S. J. Owens* and *Joseph C. France* for the plaintiff.

*James P. Gorter* and *William F. Porter* for the defendants.

HARLAN, C. J.—

The first question in this case which the Court has to determine, is, whether or not the defendants, or either of them, owed any duty to the deceased in connection with the wharf, which is alleged to have been unsafe.

The defendants contend that the deceased was not a passenger at the time of the injury, and, more than that, that he was only in the position of a licensee on the wharf. A person acting under a license, under the authorities, taking all the risks upon himself.

Now, I do not think, in this case, the deceased can be considered to have been merely in the position of a licensee

upon this wharf; nor, on the other hand, do I consider that at the time of the injury he occupied the position of a passenger. He certainly never occupied the position of a passenger, as far as The Tolchester Beach Improvement Company was concerned. There never was any contract of carriage as between him and The Tolchester Beach Improvement Company. To that company he occupied the relation of a person who has come upon its premises by an express or implied invitation. Indeed, he came there in the position of one from whom this defendant derived a profit. It seems to me that is also the relation the steamboat company occupied to him at the time of the injury. It is conceded that he was not upon the wharf for the purpose of taking the boat then about to leave for Baltimore, but under the agreement offered in evidence the wharf was the place where the passengers were landed; it was the proper place for the passengers to go and take the boats, and it doesn't appear there were any restrictions upon the people who went to Tolchester Beach upon these excusions of pleasure in using the wharf. So that I think both of these companies owed a measure of care to the deceased, but a measure of care different from that owed to a passenger, which is said to be the highest degree of care practicable under the circumstances.

Then it becomes necessary to determine what that measure of care is. Now, when a person is invited upon the premises of another, either expressly or impliedly, the duty of the owners, or the occupants of the premises, is to keep the premises reasonably safe for the person who is there in response to the invitation, exercising ordinary care, and I, therefore, propose to examine this case from that standpoint in determining whether or not there was any negligence on the part of the defendants in not having this wharf a reasonably safe place for such people to go who exercised ordinary care in the use of the wharf.

There are only two elements of negligence charged against the defendants. One of them is that the wharf at the place where the deceased went overboard was without a railing. In my judgment, the absence of a railing at a wharf of this character, a wharf of this kind, used for the purposes for which this was used, where boats land, and are of necessity required to land along side of it, cannot be considered negligence. Indeed, as we all know, where passengers are landed on a wharf, and where the gang plank is put out, there never is a railing on the wharf. And it appears from the evidence that it was necessary at this wharf, by reason of the winds and tide, to land passengers first upon the north side, and then upon the south side; and, indeed, upon all sides of that particular part of the wharf. So that the absence of a railing cannot be attributed as negligence to the defendants.

The other element of negligence is that the wharf was insufficiently lighted. The absence of a railing cannot be attributed to the defendants as negligence, from the fact that the necessities of the business required there should be no railing: but, it seems to me, there might very reasonably be imposed upon the defendants an extra duty with reference to the lighting of the wharf. If there can be no railing, and if the absence of the railing might be a source of danger to those that are there, then the wharf should be sufficiently well lighted for the protection of those upon the wharf, exercising due care, to distinguish the edge of the wharf, and to distinguish the fact that there is no railing.

Now, the evidence as to whether or not it was so dark there that night that one using ordinary care could not distinguish the edge of the wharf, is of such character that, after having read it all over, I fail to see how I can say there is but one inference to be drawn from it by a reasonable mind. And if it be such that more than one inference could be drawn from it, then the proper inference to be drawn is for the jury and not for the Court. And this brings me to the question of contributory negligence.

If there is any evidence, then, of negligence in this case, it is that the wharf was insufficiently lighted for one walking upon it, and exercising due care to distinguish the edge of the wharf, or the fact that there was no railing at this particular place.

Then the question comes up whether or not the deceased on this night, walking upon the wharf in the way he did walk, and at a time when it was, at the least difficult to distinguish the

fact that there was no railing upon the wharf, was guilty of contributory negligence in his conduct in stepping off the edge of the wharf.

The deceased, according to the evidence, came to the wharf, in the day time. He had also visited Tolchester before. One of the witnesses, if I recollect the testimony, stated he had been there as often as six times, to his knowledge, on excursions of this kind. The testimony shows, as far as it shows at all, I believe, upon that subject, there had been no change in the condition of the wharf, and that there never had been any railing around the edge of this wharf.

The deceased, it is conceded, on this occasion was not upon the wharf for the purpose of taking passage upon the particular boat then there; and when he came out from the shed that was there, and walked towards the boat, he turned aside from the direct path towards the gangplank and walked to his left. There is no dispute upon the evidence that the passage to the gangway was perfectly plain, and that the gangway could be seen. Now, what does the gangway show, as pictured upon the photograph in evidence? It shows there is a railing upon either side of it. What does that indicate to a reasonable man, to a man who had been upon the wharf before? Do not the presence of the railings, one upon either side of the gangway, and which are plainly visible to a man upon the wharf, indicate to that man, in themselves, that upon either side of the railings as you go on the boat there is danger, and that the edge of the wharf is there? For the purpose of contributory negligence, I assume it was too dark to see the edge of the wharf, but knowing from the presence of the boat and the gangway, that it must be near, the unfortunate man walks forward without stopping, directly, according to the evidence, without pausing, no doubt believing that he had not reached the edge, but into a place too dark to see, and walks overboard.

Now, it does seem to me that is not a case where it can be said he did not at least directly contribute, by his own negligence, in some degree, to his own misfortune. And if he did directly contribute, by his own negligence, in *any* degree to his own misfortune, then it is not fair, and it is not the law that the result of his actions should be charged upon the defendants in this case, for there can be no apportionment of damages. And, entertaining this view upon the question of contributory negligence in the case, it is unnecessary for me to consider the question of pecuniary interest, or the other questions that are raised by the prayers.

I think, therefore, that the defendant's second prayer should be granted. And the effect of this ruling is to say to the jury, as I do say, gentlemen, that under the Court's instruction, your verdict will be for the defendants.

Of course, I note the usual exceptions for you, gentlemen, the counsel for the plaintiff.